**In re FRESHMAN.** .

(District Court, N. D. Texas, at Dallas. June 9, 1923.)

No. 1814.

Bankruptcy ⊙⇒404(2)—Failure to prosecute application for discharge renders right res judicata.

The failure of a bankrupt to further prosecute his application for discharge after an adverse recommendation by the referee renders the question of his right to a discharge res judicata, and in new voluntary proceedings, instituted years later, he is not entitled to a discharge from the debts proved in the former proceeding, though he may be from his later debts.

In Bankruptcy. In the matter of Samuel Freshman, bankrupt. On referee's certificate recommending granting of discharge. Discharge granted as to certain debts only.

Etheridge, McCormick & Bromberg, of Dallas, Tex., for applicant.

ATWELL, District Judge. In cause No. 1211, in bankruptcy, the same bankrupt filed a voluntary proceeding. In due time he applied for his discharge. His discharge was contested. Considerable testimony was taken, upon this issue but, before a recommendation was

made by the referee to the District Judge, the referee died, and the proceedings passed to his successor, who, after having reviewed the record, concluded that it should be recommended that the discharge be not granted. Accordingly the referee so recommended to the court. This recommendation was never acted upon, and it is still open for action by the court. Those proceedings were instituted sometime in 1914 or 1915.

On November 11, 1922, the present case, No. 1814, voluntary, was filed by the bankrupt. All of the creditors included in the first application are likewise creditors in this application. There are also some other creditors. A contest was filed to the application for discharge, which was seasonably filed by the bankrupt in the instant case. The referee, in passing upon such contest, overruled the exceptions and demurrers to its sufficiency and heard testimony. Such testimony being almost entirely that of the bankrupt. After such hearing referee concluded that he could not legally deny a recommendation that the discharge be granted, and cited Bluthenthal v. Jones, 208 U. S. 64, 28 Sup. Ct. 192, 52 L. Ed. 390, and In re Elkind, 175 Fed. 64, 99 C. C. A. 86, as authorizing and supporting his action.

This court judicially knows, even though it has no actual knowledge, that this same bankrupt has an application pending in this court for a discharge from practically the same debts and creditors that are scheduled in the present proceeding, and that, however such discharge was recommended against by the referee, he has not pressed a hearing on such application, but has allowed the years to run by, and is now seeking through another proceeding the same thing that he was compelled to seek in the first proceeding, if he should have relief.

The evidence submitted to the referee in the first proceeding satisfied that officer that the bankrupt had been guilty of such infractions as rendered it unjust to allow him to have the benefit of the relief afforded by this act of Congress. Because there was no formal denial of the discharge by the District Court, it is contended that there could be no res judicata. The phrase "res judicata," as ordinarily understood and defined by the courts, means an adjudication; a former judgment; a definite hearing and determination.

This does not seem to be the significance that the bankrupt courts have been giving to the phrase. Circuit Judge Sanborn, speaking for the Circuit Court of Appeals for the Eighth Circuit in Kuntz v. Young, 131 Fed. 719, 65 C. C. A. 477, held that, when the bankrupt failed to apply for his discharge within the 12 months prescribed by the law, his failure to do so charged him with a judgment against him which was res judicata and would prevent his discharge from the same debts in a subsequent proceeding. The distinguished jurist said:

"The failure of the bankrupt to apply for a discharge from his debts in the involuntary proceeding within 12 months after the adjudication foreclosed his right to such a discharge. It is only within that time that he may, under the Bankruptcy Law, make a lawful application to be relieved from his debts. The record of his failure to make the application in that proceeding was, in effect, a judgment by default in favor of his creditors to the effect that he was not entitled to a discharge from their claims. A judgment by default renders the issue as conclusively res judicata as a judgment upon a trial. The result is that the question whether or not the bankrupt was entitled to be discharged from the claims of the creditors scheduled and provable in the

involuntary proceeding was conclusively determined in an action between them and the bankrupt by the record of his failure to apply for a discharge in that proceeding. But the parties to the voluntary were the same as to the involuntary proceeding, for Kuntz scheduled the same claims and creditors, and the trustee who objected to his discharge was the legal representative of the latter. The bankrupt's application for a discharge in the voluntary proceeding presented the same issue which had been conclusively determined against him in the involuntary proceeding, and there was no error in the refusal of the court below to reverse the former judgment and grant the application."

This case was followed by District Judge Lanning in 133 Fed. 1,000, In re Weintraub. Circuit Judge Ward, speaking for the Court of Appeals for the Second Circuit in In re Elkind, 175 Fed. 64, 99 C. C. A. 86, held, in substance, that the statute meant what it said, when it referred to the application for discharge within the year, and that, such application having been made and dismissed for a technical error, was sufficient to authorize the making of a subsequent application, even though such subsequent application was more than 12 months after adjudication. In the course of the opinion he says:

"An examination of the record in the earlier proceeding shows that no order was ever entered upon the memorandum of the District Judge, so that the question is not res judicata."

This expression would seem to be dictum.

In the present case the bankrupt has seen fit to ignore his first proceeding. Perhaps he was convinced that a pursuit thereof would result in an order denying his discharge. At any rate, he has permitted the case to go unhastened, and after the lapse of seven or eight years seeks by another proceeding to do what he failed to accomplish in the first proceeding. In re Cooper (D. C.) 236 Fed. 298; In re Kuffler (D. C.) 155 Fed. 1018, affirmed 168 Fed. 1021, 93 C. C. A. 671; In re Julius Silverman, 157 Fed. 675, 85 C. C. A. 224; In re Elby (D. C.) 157 Fed. 935; In re Pullian (D. C.) 171 Fed. 595; In re Von Borries (D. C.) 168 Fed. 718.

I am unable to note any substantial difference between a failure to apply for a discharge within 12 months and a failure to prosecute an application for a discharge after a referee shall have recommended against such a discharge. I, of course, see the technical difference. But there is no real difference, and while the right to a discharge is a valuable right, and while this right was the real purpose, doubtless, that Congress had in mind, when it passed the bankrupt statute (Comp. St. §§ 9585–9656), still we may not disregard the fundamentals of equity jurisdiction and allow an applicant to feel out the temperament of the court, through its officers, and then abandon his pleadings, and when time has changed the personnel of referee and judge, re-enter the tribunal and seek the same relief that he could not get at a former time. In re Stone (D. C.) 172 Fed. 947.

As to the new creditors, that is, as to the creditors in the present petition who were not creditors in the first petition, there appears to be no just reason why he should not be discharged therefrom, but as to the creditors who were creditors in the first petition his application for a discharge is denied, and an order will be drawn in accordance with this view.