**In re RINKER.**

No. 1438.

United States District Court
D. New Mexico.

Sept. 16, 1952.

Robert A. Morrow, Raton, N. M., for bankrupt.

Edward E. Triviz, Asst. U. S. Atty., Albuquerque, N. M. (Maurice Sanchez, U. S. Atty., Albuquerque, N. M., on the brief), for Farmers Home Administration.

HATCH, District Judge.

On January 11, 1937, Rinker filed a petition in bankruptcy in this court. Adjudication and reference were granted by the court on that day. Rinker subsequently filed a petition for discharge on July 2, 1937, and on the same day the court entered an order of notice thereon, setting a hearing on August 14, 1937, at the office of the referee. The bankrupt and his attorney appeared at the time and place set for this hearing, but the referee was out of town, and no person appeared in opposition to the discharge. However, on that day, Hart and Corber, creditors of the bankrupt, filed written objections to his discharge. Thereafter, these creditors agreed to withdraw their objec-

tions on the condition that the bankrupt not urge his objections to the trustee's report nor his claim for attorney's fees and damages to his exempt property. The bankrupt performed his part of the agreement, and Hart and Corber did not further oppose the discharge. Inadvertently, however, Hart and Corber failed to withdraw the specifications of objection to the bankrupt's discharge which they had previously filed. No further action was taken on the question of discharge, and upon recommendation of the referee, the court closed the case on April 22, 1940.

Among the scheduled debts of the bankrupt was the claim of the Farmers Home Administration for $320.86 plus interest, based on six promissory notes for crop and feed loans. In 1946, this creditor contacted Rinker with regard to this debt, but there is a dispute as to whether the bankrupt was informed that no discharge had been granted. The creditor took no further action until 1951, when it made additional attempts to collect the debt. On June 30, 1952, creditor's attorney notified the bankrupt that there had been no discharge, and the bankrupt alleges that this was his first notice that no discharge had been entered in the case. On July 16, 1952, Rinker filed a motion in this court to grant his discharge. Farmers Home Administration opposes this motion.

The applicable law is to be found in Title 11, U.S.C.A. § 32, which provides in substance that within twelve months subsequent to being adjudged a bankrupt, any person may file an application for a discharge in the court of bankruptcy in which the proceedings are pending. It is further provided that the discharge shall be granted unless the bankrupt has committed certain specified acts. The first portion of this section was superseded on September 22, 1938, by the Chandler Act, by the terms of which the adjudication of any person as a bankrupt shall operate as an application for discharge. However, the Chandler Act is not applicable in the instant case.

Here the bankrupt filed his application for discharge within the statutory period, and there is no allegation that he has committed any of the acts which under the statute would preclude discharge. The bankrupt is therefore entitled to his discharge unless barred by the fact that the case has been closed.

The purpose of the Bankruptcy Act is twofold, i. e., to permit an honest debtor to start afresh, relieved from his burden of indebtedness, and to distribute his assets equitably among his creditors. The Act must be reasonably construed to effect both objects. Williams v. U. S. Fidelity & Guaranty Co., 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713. Prior to the Chandler Act, the application for discharge was an entirely separate and independent proceeding from the adjudication and settlement of the estate. Gilbert v. Shouse, 61 F.2d 398; In re Clisdell, D.C., 101 F. 246; In re Glass, D.C., 119 F. 509.

An application for discharge which was filed before passage of the Chandler Act, and in which no order was ever entered by the judge, was not res adjudicata with respect to a subsequent application for discharge. In re Elkind, 2 Cir., 175 F. 64; In re Lyons, 287 F. 602.

The question of the effect of closing the case is discussed in In re Turner, D.C., 36 F.Supp. 655, 657. The court there explained the dual purpose of the bankruptcy act and went on to say:

"Neither initiation nor the closing of the 'case' relating to the distribution of the property was dependent upon the filing or failure to file petition for discharge. The process of distribution did not even depend upon the question of whether a discharge was justifiable under law or fact. Therefore, the referee had the power to close the case * * * without regard to the question of discharge. * * * Quite conversely, a discharge could not be granted unless founded in adjudication. The application for discharge was an entirely separate and independent proceeding, the maintenance of which was conditioned upon voluntary action by the bankrupt within the time limited by law, but this proceeding could be maintained so long as the adjudication remained effective, without regard to the proceedings to distribute the property."

In Freshman v. Atkins, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193, an application for discharge was made within the statutory time, and the referee recommended that the discharge be denied. The discharge was not acted upon by the court, nor was it brought to the court's attention. Seven years later a second voluntary petition was filed by the bankrupt. The Supreme Court held that the original application for discharge was still pending, and in ordinary course could be considered and acted upon by the court.

Prior to the Chandler Act, closing the case as regards the estate had no effect on a pending application for bankrupt's discharge. The application is therefore still pending in this court.

Rinker made application for discharge within the statutory period, and fulfilled all other requirements for discharge. This court entered an order on July 2, 1937, setting August 14, 1937, as the day on which objections to the discharge would be heard. Only Hart and Corber entered objections to the discharge at that time, and those objections have since been withdrawn. There was no other opposition. Farmers Home Administration is in no position to talk of "laches" and "neglect" on the part of the bankrupt. This creditor raised no objections within the time fixed for such objections, and took no action whatsoever for six years after the case was closed. There was then another lapse of five years before further rather ineffectual steps were taken.

In In re Williams, D.C., 16 F.Supp. 889, 890, affirmed 4 Cir., 86 F.2d 167, the petition in bankruptcy was filed January 31, 1921, and the application for discharge was filed on November 8, 1921, but the required costs for notices to creditors not having been paid at the time, the notices to creditors for a hearing on the application were not issued until January 14, 1935, after the required costs had been paid to the clerk. In the meantime, the bankrupt estate had been regularly and duly administered and closed. The long delay in the prosecution of proceedings for discharge alone constituted the basis of the objection thereto. The court, in granting the discharge, said:

"While the bankrupt apparently has been guilty of gross laches in the prosecution of his petition for discharge, the objecting creditor and its predecessors in title have been equally guilty. No creditor or party in interest is shown or even alleged to have been prejudiced by the great delay as occurred in some of the cases relied on by the objecting creditor. To refuse the order of dismissal will not deprive the creditor of any right to which it is in equity and good conscience entitled, while to grant the motion will but permit it to obtain a great advantage as the direct result of its own prolonged silence and inaction."

A main purpose of the bankruptcy law was to afford honest bankrupts a discharge from their debts. Such right is to be jealously protected. In re Elkind, supra. The bankrupt here made every effort to comply with the law, and there is no showing of any fact which would warrant his being penalized for a mere oversight.

An appropriate order granting the bankrupt's discharge may be prepared and submitted for signature.